Mr. Chief Justice Sharkey
delivered the opinion of the Court.
This case originated out of a trial of the right of property, consisting of slaves, which were levied on by virtue of an execution in favor of the plaintiff against James McDonald, administrator of the goods and chattels of Elias Ford. The property was claimed by Holloway, the defendant, and on an issue to try the right, a verdict was found in his favor.
A technical question is raised in the first instance, by an objec *621 tion to the bill of exceptions. Two bills of exceptions, it seems, were taken to the decision of the Court in overruling a motion for a new trial. By the first, it "is stated “ that on the trial of the issue the following was the testimony given on the trial,” and the words “ here insert the same,” enclosed in brackets. It is further stated, that the jury found a verdict for the claimant, and the plaintiff moved for a new trial. This bill of exceptions does not inform us what evidence was given, and we have often held that nothing is part of the record, which does not properly belong to it, unless it be inserted in the bill of exceptions. This rule would exclude the execution which is appended to the record. The same defect is found in the second bill of exceptions, and excludes the execution of the plaintiff, and also the will of John Ford, which was a part of' the claimant’s evidence. But the effect of this rule is, that only such matters as are not properly placed upon record, by incorporating them in the bill of exceptions, are to be excluded. It does not reject the whole record, and if the error be apparent without them, then we must reverse ; and if it is not, then we must affirm. The judgment on its face may be erroneous, or the record divested of matters not properly placed on it may show error. 6 Howard, 630. This rule sometimes operates as a hardship, .-by compelling us to decide on an imperfect statement of the case, or on a case different from that which was tried in the Court below; but it is the fault of parties in not having their cases properly prepared.
Let us see, then, what this record does properly contain. In the first place, we have the issue tendered by the plaintiff in exécution, which recites the judgment and the date of its rendition, together with the names of the parties ; that execution emanated thereon on the 14th day of April, 1842, which was levied on certain slaves, nineteen in number, naming them, which were claimed by the defendant, who gave a bond to try the right, and concludes by averring that the property was liable to the execution. In this issue the claimant joined. Then it appears a jury was empannelled, and we have also their verdict in favor of the claimant. Then follows a motion to set aside the verdict and grant a new trial, because the verdict of the jury was contrary to law and evidence ; and an order overruling the motion. The first bill of exceptions follows, *622 which is of little value, as it contains none of the evidence. It also shows, however, that the jury found a verdict for the claimant; that the plaintiff moved, for a new trial; that the motion was overruled, and that the plaintiff excepted, Then follows the second bill of exceptions, which commences by'professing to set out the evidence ; the documentary evidence is however not inserted, but it goes on to state the parol evidence, and concludes with the certificate of the Judge that it contained the “ substance of the prominent points of all the evidence given on the trial.” Then follows the prayer for an appeal, and the order granting it, and approving the bond. We have then a record before us, by which it appears that under a judgment rendered in favor of the plaintiff,, an execution was levied on certain slaves, which were 'claimed by the defendant; that the plaintiff tendered an issue, in which the defendant joined to try the right; on which the jury found a verdict for the claimant, which the plaintiff moved to set aside, because it was contrary to law and evidence, and that the Court overruled the motion ; whereupon the plaintiff appealed. This is enough to 'make a fair case for adjudication, and we must presume that the judgment was right, unless the plaintiff shows affirmatively that it was wrong. This showing must depend upon the evidence which is legitimately before us- by’the second bill of exceptions, which is in substance as follows —
The plaintiff proved that Elias Ford owned the slaves in 1818, and up to 1823 or 1824, when they were sold at public sale, not under legal process, to Ebenezer Ford, who received a transfer in writing which was never recorded,-and who, as a consideration, agreed to pay certain debts for Elias Ford, but not all his debts. The slaves were present at the sale, but were not. delivered, and they continued in the possession of Elias Ford up to the time of his death, in 1840. Ebenezer afterwards transferred the slaves to John Ford, the father of Elias, without changing the possession, upon an agreement that he, John, should account to him, Ebenezer, for the debts he had paid for Elias, amounting to the value of the slaves, which John did ; that there was no fraud between Ebenezer and John, and no understanding between Ebenezer and Elias. John Ford sugT gested that the sale was made to prevent the property from being *623 sacrificed. John Ford died in 1826, the property still being in the possession of Elias, who once changed his residence to Copiah county, taking the slaves with him, and who, on 'one occasion, shortly before his death, offered to sell several of them to pay his debts. The slaves were pointed out to the sheriff as property which was in possession of Elias Ford at the» time of his death, by the administrator ; and here the plaintiff closed his evidence.
The,claimant first introduced the will of John Ford, which, as it was not inserted in the bill of exceptions, constitutes no part of the evidence. He proved by Warren, a witness, that David Ford, executor óf John, hired out one of the slaves for fifty dollars, half of which sum went in discharge of á debt due by Elias, who was then absent. It was also in proof that after the death of Elias, David, the executor of John, went to the house of the widow, with whom the claimant has intermarried, and told her that he delivered her possession of the slaves, some of them being about the house, and the balance on the plantation ; that, they were free from incum-brance, and a very handsome property, &c., which delivery was doubtless owing to a provision in the will of his testator. On cross examination this witness stated that he was at the public sale made by Elias Ford, at which' Ebenezer became the purchaser, when John Ford tapped him on the shoulder, and asked him privately if he had come to purchase any of the slaves ; and being answered in the affirmative, he told the witness that they were not to go out of the family ; that the sale was made for the purpose of screening his son from the payment of a judgment for a security-debt. It also appeared, that the executor of John Ford had exercised some control over the property, but how long he had done so, the witness did not know; and this was all the evidence. It presents a case which requires but little comment. When the plaintiff had proved that after the sale the possession remained with the vendor from 1818 until his death, in 1840, and afterwards with his widow, at least a very strong prima facie case of fraud was made out, and it devolved on the claimant to rebut it. His proof, however, tended to strengthen, instead of to destroy, the presumption of fraud.
But it is said the transaction as between Ebenezer and John Ford was not fraudulent. It was as much prima facie fraud for John to *624 leave the possession for so long a time with his son, as though he had been the original purchaser ; besides which, his declaration to the witness as to the object of the sale, made a stronger case of fraud against him than that which existed between Elias and Eben-ezer. He had communicated the fraudulent design of the sale, and everything which occurred subsequently, confirmed the truth of his statement to the witness. It is also said that the transaction was not fraudulent as to this creditor, whose debt was subsequently contracted. Fraud vitiates everything into which it enters. Permitting the negroes to remain with the son was enabling him to obtain a credit on his apparent ownership, and was fraudulent as to all creditors whose debts were contracted during such possession, who had not an actual knowledge of the nature of that possession. The verdict was therefore contrary to law and must be set aside, and a n.ew trial granted.